IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MONTANA

IN THE MATTER OF THE
SEARCH OF:

THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER (720)
654-9298, ACCESSED THROUGH
IMSI: 310150746082895 (TARGET
CELLPHONE)

Case No. MJ-22-84-BLG-TJC

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, John A. Hensley, a Special Agent with the Drug Enforcement Administration (DEA) being duly sworn, state the following:

A. **Introduction and Agent Background**

1. I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Billings Resident Office (BRO). As such, I am a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a Government Agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed by the DEA since September 2012. I have completed the 18 week Basic Agent Training Academy at the DEA Justice Training Center located in Quantico, VA, where emphasis in training included basics of report writing, law, interview and interrogation techniques, automated information systems, drug recognition, as well as leadership and ethics. I have been involved in numerous aspects of narcotics investigations, including, but not limited to: debriefing defendants, witnesses, and informants; conducting surveillance and undercover

operations; preparing and executing search warrants; and analyzing documentary and physical evidence.

**B.    Basis for Facts Contained in this Affidavit**

2. I make this Affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of the DEA to ascertain the physical location of the cellular telephone assigned call number (720) 654-9298 (TARGET CELLPHONE), accessed through IMSI: 310150746082895, subscribed to Alejandra CANACA at 1879 South Winona Court, Denver, Colorado, 80219, including but not limited to E-911 Phase II data (or other precise location information), for a period of thirty (30) days.[1] The TARGET CELLPHONE is provided with service by AT&T Wireless (a wireless communications service provider headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, Florida, 22408), a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15). The TARGET CELLPHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, law

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the TARGET CELLPHONE at the start and end of any call. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. *See In re Application*, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

2

enforcement reports, public records, interviews and information received from other law enforcement agents, my experience and training, and the experience of other Agents. Unless otherwise noted, where in this affidavit I assert that a statement was made, the information provided was provided by another Agent, Law Enforcement Officer, or witnesses who may have had either direct or hearsay knowledge of that statement and to whom I or others haven spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since the affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein, are not being relied on in reaching my conclusion that the requested warrant should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

4. Probable cause exists to believe that the Requested Information will constitute or lead to evidence of offenses involving the possession and distribution of methamphetamine, heroin, and fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) as well as the identification of individuals who are engaged in the commission of the aforementioned offense (Conspiracy in violation of 21 U.S.C. § 846). For the reasons set out in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will continue to be committed by Alejandra FLORES-CANACA, aka Yissel FLORES.

5. The information contained in this Affidavit is based upon information learned during your affiant's investigation regarding the illegal narcotics distribution activities of Brandi HIATT and Andrew Paul GUIOT.

6. Pursuant to the facts outlined below, there is probable cause to believe that the listed TARGET CELLPHONE is being used in furtherance of drug trafficking, and that the Requested Information will lead to evidence, fruits, and instrumentalities of drug trafficking, as well as to the identification of individuals who are engaged in the commission of drug trafficking and related crimes.

**C. Probable Cause**

7. During May of 2021, the Drug Enforcement Administration (DEA) and Montana Department of Criminal Investigations (DCI) initiated an investigation of a methamphetamine trafficking organization operating in the Billings, Montana area. Through the course of the investigation, agents identified Brandi HIATT, and her boyfriend James CAMERON (deceased), as large-scale drug distributors, responsible for distributing fentanyl, methamphetamine, and heroin in the Billings, Montana, area.

8. On September 10, 2021, the Honorable Jessica T. Fehr, District Judge for the Thirteenth District of Montana, signed a Search Warrant, authorizing the search of HIATT's residence for evidence of Criminal Distribution of Dangerous Drugs, Criminal Possession of Dangerous Drugs, and Criminal Possession of Drug Paraphernalia. On September 15, 2021, agents executed the warrant, resulting in the seizure of approximately 85.5 grams of suspected fentanyl pills, approximately 18 grams of suspected heroin, and $19,254.00 United States Currency.

9. On the same date, agents interviewed CAMERON. Agents advised CAMERON of his Miranda Rights, and CAMERON agreed to speak to agents without the presence of an attorney. During the interview, CAMERON advised that he and HIATT had obtained drugs from Colorado for approximately eighteen months to two years. CAMERON stated that on average, he and HIATT obtained two pounds of methamphetamine, two to three ounces of heroin, and between 500 to 1,000 fentanyl pills per trip.

10. On September 17, 2021, agents met with HIATT and CAMERON. During the meeting, HIATT confirmed that she and CAMERON obtained drugs from Colorado, stating the largest quantity of drugs they obtained from Colorado was two pounds of methamphetamine, ½ pound of heroin, and pills.

11. During March of 2022, agents were able to recruit a Confidential Source (CS) who was a past associate of HIATT's and familiar with HIATT's involvement in drug distribution. Your affiant believes the CS to be credible because the CS provided highly detailed, self-incriminating information, much of which was already known to investigators through involvement in the investigation. Furthermore, the CS has minimal criminal history, and is cooperating for the purpose of obtaining judicial consideration for the CS's role in this investigation.

12. On April 9, 2022, the CS contacted your affiant and advised that the CS had spoken to Brandi HIATT via phone call. According to the CS, HIATT advised the CS that HIATT would email a female to see if the female would meet the CS (the purpose of the meeting would be to supply the CS a large quantity of methamphetamine). HIATT later contacted the CS again and advised that the name of the female is Aleeth FLORES on Facebook. On April 10, 2022, HIATT sent the CS phone number 1-720-416-1590 as a contact for

FLORES. The CS then contacted FLORES via FLORES's Facebook messenger account, as well as sending an SMS message to 1-720-416-1590.

13. On April 19, 2022, the CS completed a recorded call to FLORES via dialing 1-720-416-1590, as witnessed by SA Hensley. An unknown female, who identified herself as FLORES' girlfriend (UF1), answered the phone and advised that FLORES does not speak English. The CS advised that the CS is "Brandi's" friend, and UF1 advised that FLORES knows HIATT. UF1 quickly advised that FLORES said it would be $6.00 per pill; the CS responded that the CS did not want pills. UF1 asked if the CS wanted "black" (a common term for black tar heroin), and the CS responded that the CS wanted "clear" (meaning methamphetamine). UF1 then advised another individual in Spanish that the CS wanted "crystal." UF1 then advised the CS that the price would be $400.00 per ounce, then, after negotiation, reduced the price to $375.00 per ounce. UF1 advised that the CS would have to come to Denver, Colorado, and the transaction would take place a couple of minutes away from her house. UF1 advised that UF1 would need a couple of day's notice to get the transaction ready. UF1 and the CS then agreed to conduct the transaction in a couple of weeks.

14. On April 21, 2022, your affiant met with investigators assigned to the Billings HIDTA (High Intensity Drug Trafficking Area) Task Force. During the meeting, investigators advised your affiant that their investigation had identified FLORES as a large-scale poly-drug distributor supplying at least eight other Billings, MT, area drug distributors.

15. On April 25, 2022, the CS again placed a controlled-recorded call to FLORES via calling 1-720-416-1590, as witnessed by your affiant. During the call, UF1, again translating for

FLORES, arranged to meet in Denver, Colorado, for the purpose of obtaining ½ pound of methamphetamine from FLORES on April 28, 2022.

16. On April 20, 2022, agents prepared Administrative Subpoena RM-22-222634 requesting AT&T provide subscriber information and toll records for 1-720-416-1590. AT&T responded that the phone is subscribed to Alejandra CANACA at 1879 S. Winona Court, Denver, CO, 80219. A review of CANACA's criminal history reveals past arrests for Dangerous Drugs in August of 2021, Possession of Dangerous Drugs in 2018, and Alien Removal in 2016.

17. On April 28, 2022, your affiant traveled with the CS to Denver, Colorado, area, where the CS and your affiant completed multiple phone calls to 1-720-416-1590 and discussed meeting with UF1 and FLORES for the purpose of purchasing methamphetamine. Subsequent to the conversations, your affiant (acting in an Undercover capacity) met with UF1 and FLORES and purchased approximately ½ pound of suspected methamphetamine for $3,000.00.

18. Subsequent to the transaction, the CS received an SMS text message indicating that FLORES had changed her phone number, and her new phone number was 720-654-9298 (TARGET CELLPHONE). On May 2, 2022, DEA issued an Administrative Subpoena requesting subscriber information for the TARGET CELLPHONE. On the same date, AT&T responded that the TARGET CELLPHONE is subscribed to Alejandra CANACA, at 1879 S Winona Court, Denver, Colorado, 80219. The TARGET CELLPHONE is assigned IMSI number 310150746082895, the same number previously assigned to FLORES' past phone number. Your affiant knows that an IMSI number is a unique identifier that identifies the subscriber using a mobile network. Because FLORES' phone

7

number changed, but the IMSI number remained the same, your affiant believes FLORES maintained the same cellular device to access the mobile network (either cellular phone or SIM card), but changed her phone number. Based upon training and experience, your affiant knows that individuals involved in drug trafficking often change their phone numbers in order to evade law enforcement.

19. On May 2, 2022, the CS completed a recorded call to FLORES via dialing the TARGET CELLPHONE, as witnessed by your affiant. During the call, UF1 again spoke with the CS, and after translating with another individual (believed to be FLORES), UF1 agreed to sell the CS two pounds of methamphetamine in the coming weeks for $11,000.00.

20. On May 9, 2022, the Honorable Timothy J. Cavan, United States Magistrate Judge for the District of Montana signed a Search and Seizure Warrant authorizing the seizure of location information pertaining to the TARGET CELLPHONE (Case No. MJ-22-71-BLG-TJC). Agents executed the warrant on the same date, and received location information from May 9, 2022 through June 8, 2022. As a result of the acquisition of the information, agents were able to locate FLORES at multiple locations.

21. On May 12, 2022, agents utilized an additional Undercover officer, to successfully arrange and purchase approximately 500 suspected fentanyl pills from CANACA for $3,000.00, in Denver, Colorado. Agents were able to observe the general location of the TARGET CELLPHONE both before and after the transaction.

22. On June 9, 2022, your affiant (operating in an Undercover capacity) spoke with UF1 (now identified to be Evelyn LUNA-HERNANDEZ) over the TARGET CELLPHONE. During the call, your affiant explained that your affiant was making a lot of money selling methamphetamine "here." Your affiant further coordinated with LUNA-HERNANDEZ

(who was speaking with FLORES in Spanish during the call), to conduct a large quantity methamphetamine purchase during the week of June 20, 2022.

23. Your affiant knows, based on training and experience, that drug traffickers often keep their cell phones with them on their person. Your affiant believes that locating the TARGET CELLPHONE will lead to additional evidence of violations of Title 21, United States Code 841 (a) (1) and 846, because agents will be able to locate FLORES and/or LUNA-HERNANDEZ before and after drug transactions, thus identifying the location of possible stash houses and potential co-conspirators, such as drug customers, drug suppliers, and individuals and locations involved in laundering or receiving drug proceeds.

**D. AT&T Wireless Overview**

24. In my training and experience, I have learned that AT&T Wireless is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device

25. Based on my training and experience, I know that AT&T Wireless can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

26. Based on my training and experience, I know that AT&T Wireless also can collect per-call measurement data, which AT&T Wireless also refers to as "NELOS." NELOS data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

27. Based on my training and experience, I know that AT&T Wireless provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records including Timing Advance or what is referred to as Truecall or Trucall. E-911 Phase II data provides

relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

28. Based on my training and experience, I know that AT&T Wireless can collect E-911 Phase II data about the location of TARGET CELLPHONE, including by initiating a signal to determine the location of TARGET CELLPHONE on AT&T Wireless's network or with such other reference points as may be reasonably available.

**E. Authorization Request**

29. Based on the forgoing, there is probable cause to believe that the Requested Information will lead to evidence regarding the activities described above. The Requested Information is necessary to determine the location of Alejandra FLORES-CANACA (aka Aleeth FLORES), her source of supply, and any coconspirators participating in the distribution of methamphetamine, heroin, and/or fentanyl.

30. Wherefore, pursuant to Federal Rule of Criminal Procedure 41, it is requested that the Court issue a warrant and Order authorizing agents of the Drug Enforcement Administration to obtain the Requested Information for a period of thirty (30) days.

31. It is further requested that the Court direct AT&T to assist agents of the Drug Enforcement Administration by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct AT&T, the service provider for the TARGET CELLPHONE, to initiate a signal to determine the location of the TARGET CELLPHONE on the service provider's network or with such other reference points as

may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed warrant, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the TARGET CELLPHONE, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Drug Enforcement Administration.

32. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELLPHONE outside of daytime hours.

33. It is further requested that the warrant and this Affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of Agents and others, except that working copies may be served on Special Agents and other investigative and Law Enforcement Officers of the Drug Enforcement Administration, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and AT&T, as necessary to effectuate the Court's Order.

34. It is further requested that pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

FURTHER YOUR AFFIANT SAYETH NOT:

_____
John A. Hensley
Special Agent
U.S. Drug Enforcement Administration
Billings Resident Office

Sworn before me on this **22** day of June, 2022.

_____
Honorable Timothy J. Cavan
United States Magistrate Judge